# MONTANA-DAKOTA UTILITIES CO. *v.* NORTH-WESTERN PUBLIC SERVICE CO.

No. 77.   Argued November 27, 1950.—Decided May 7, 1951.

*William D. Mitchell* argued the cause for petitioner. With him on the brief were *John C. Benson, H. F. Fellows* and *Rodger L. Nordbye.*

*Jacob M. Lashly* argued the cause for respondent. With him on the brief were *Max Royhl, Fredric H. Stafford* and *Paul B. Rava.*

By special leave of Court, *Howard E. Wahrenbrock* argued the cause for the Federal Power Commission, as *amicus curiae.* With him on the brief were *Solicitor General Perlman, Robert L. Stern, Bradford Ross* and *Reuben Goldberg.*

MR. JUSTICE JACKSON delivered the opinion of the Court.

Petitioner and respondent are public electric utilities companies engaged in interstate commerce. Petitioner's predecessor and respondent were under the same management through interlocking directorships and joint of-

ficers. During that relationship the two interchanged electric energy, shared expenses, and made a number of intercompany contracts establishing rates and charges, which contracts were filed with and accepted by the Federal Power Commission. These contract rates and charges are at the root of this controversy. Petitioner charges that, during the period 1935–1945, its predecessor paid respondent unreasonably high prices for what respondent furnished it, and that it received unreasonably low rates for what it provided respondent. That advantage, it is alleged, was fraudulent and unlawful and was due to the interlocking directorate, which prevented protest to the Commission to have reasonable rates and charges established pursuant to the provisions of the Federal Power Act.[1]

Petitioner sued in United States District Court and asserted jurisdiction on the ground that the case "arises under the Constitution or laws of the United States"[2] and, more particularly, under a "law regulating commerce,"[3] specifically the Federal Power Act.

Petitioner was successful in the District Court, which found the contracts void for fraud and the rates and charges established therein unreasonable. The court also determined what would have been reasonable rates and charges for the period in question and gave judgment for the difference between its conception of reasonable charges and the actual charges, amounting to over three-quarters of a million dollars.[4]

The judgment was reversed by the Court of Appeals for the Eighth Circuit on the ground that the District Court was without jurisdiction.[5]

[1] 41 Stat. 1063, 49 Stat. 838, 62 Stat. 275, 16 U. S. C. §§ 791a–825r.
[2] 28 U. S. C. § 1331.
[3] 28 U. S. C. § 1337.
[4] Not reported.
[5] 181 F. 2d 19.

As frequently happens where jurisdiction depends on subject matter, the question whether jurisdiction exists has been confused with the question whether the complaint states a cause of action. The Judicial Code, in vesting jurisdiction in the District Courts, does not create causes of action, but only confers jurisdiction to adjudicate those arising from other sources which satisfy its limiting provisions. Petitioner asserted a cause of action under the Power Act. To determine whether that claim is well founded, the District Court must take jurisdiction, whether its ultimate resolution is to be in the affirmative or the negative. If the complaint raises a federal question, the mere claim confers power to decide that it has no merit, as well as to decide that it has. In the words of Mr. Justice Holmes, ". . . if the plaintiff really makes a substantial claim under an act of Congress there is jurisdiction whether the claim ultimately be held good or bad." *The Fair* v. *Kohler Die Co.,* 228 U. S. 22, 25. See also *Hurn* v. *Oursler,* 289 U. S. 238, 240. Even a patently frivolous complaint might be sufficient to confer power to make a final decision that it is of that nature, binding as *res judicata* on the parties.

Petitioner's complaint, in substance, alleges existence of the interlocking directorship, contends that such relationship was used fraudulently to deprive it of its federally conferred right to reasonable rates and charges, and demands reparations. We think there was power in the District Court to decide whether the claims so grounded constitute a cause of action maintainable in federal court and, if so, whether it is sustained on the facts. We think a direction to dismiss for want of jurisdiction was error and that it should not stand as a precedent.

However, it is clear that the reason underlying the Court of Appeals' decision was that no federal cause of action was established. If this was correct, we should sustain

the judgment of reversal, though on other grounds than those stated.

The petitioner's problem is to avoid Scylla without being drawn into Charybdis. If its cause of action arises from fraud and deceit, it is a common-law action of which a federal court has no jurisdiction, there being no diversity in citizenship of these parties. But if it arises from being charged rates in excess of those permitted by the Power Act, it is confronted with the exclusive powers of the Commission to determine what those rates are to be. Hence, it is necessary to bring the case into court, not as a fraud action, but as one to enforce the Power Act, using the allegations of fraud to escape the limitations of the Power Commission remedies.

## I.

Petitioner identifies as the source of its cause of action the Federal Power Act's requirement of reasonable electric utility rates,[6] which, it contends, creates its legal right to rates which a court may deem reasonable, even if different from those accepted by the Federal Power Commission. It is admitted, however, that a utility could not institute a suit in a federal court to recover a portion of past rates which it simply alleges were unreasonable. It would be out of court for failure to exhaust administrative remedies, for, at any time in the past, it could have applied for and secured a review and, perhaps, a reduction of the rates by the Commission.[7]

Petitioner gives its case a different cast by alleging that by fraudulent abuse of the interlocking relationship

---

[6] Section 205 (a) of the Act, 49 Stat. 851, 16 U. S. C. § 824d (a), states that: "All rates and charges . . . and all rules and regulations affecting or pertaining to such rates or charges shall be just and reasonable, and any such rate or charge that is not just and reasonable is hereby declared to be unlawful."

[7] § 206 (a), 49 Stat. 852, 16 U. S. C. § 824e (a).

its predecessor was deprived of its independence and power to resort to its administrative remedy.

But the problem is whether it is open to the courts to determine what the reasonable rates during the past should have been. The petitioner, in contending that they are so empowered, and the District Court, in undertaking to exercise that power, both regard reasonableness as a justiciable legal right rather than a criterion for administrative application in determining a lawful rate. Statutory reasonableness is an abstract quality represented by an area rather than a pinpoint. It allows a substantial spread between what is unreasonable because too low and what is unreasonable because too high. To reduce the abstract concept of reasonableness to concrete expression in dollars and cents is the function of the Commission. It is not the disembodied "reasonableness" but that standard when embodied in a rate which the Commission accepts or determines that governs the rights of buyer and seller. A court may think a different level more reasonable. But the prescription of the statute is a standard for the Commission to apply and, independently of Commission action, creates no right which courts may enforce.

Petitioner cannot separate what Congress has joined together. It cannot litigate in a judicial forum its general right to a reasonable rate, ignoring the qualification that it shall be made specific only by exercise of the Commission's judgment, in which there is some considerable element of discretion. It can claim no rate as a legal right that is other than the filed rate, whether fixed or merely accepted by the Commission, and not even a court can authorize commerce in the commodity on other terms.

We hold that the right to a reasonable rate is the right to the rate which the Commission files or fixes, and that,

except for review of the Commission's orders, the courts can assume no right to a different one on the ground that, in its opinion, it is the only or the more reasonable one.

## II.

The petitioner here contends that its case is different by reason of its allegations of fraud. Those, the evidence that supports them, and the findings are exceedingly general, and it is not entirely clear whether, in addition to the claim that constructive fraud may be inferred from the intercorporate relationship, specific acts of deceit are found. Nor does it appear to have been thought that the difference between constructive and actual fraud mattered.

If the petitioner's grievance arises from active fraud and deceit, it gains nothing from the Federal Act. Such an action would have been maintainable if no Federal Power Act had been enacted. Before the Act, petitioner would have had no statutory right to a reasonable rate, but it did have a common-law right not to be defrauded into paying an excessive or unreasonable one. The Federal Act adds nothing to fraud as an actionable wrong, and, therefore, to find a cause of action of this character would only be to dismiss it for want of diversity.

But petitioner's case appears to have rested more heavily and perhaps entirely on constructive fraud presumed from the intercorporate relationship. The Act vests in the Commission power to authorize an interlocking directorate, which otherwise is prohibited, "upon due showing . . . that neither public nor private interests will be adversely affected thereby." [8] The relationship here concerned had received Commission approval. The effect of the approval is to exempt the relationship from the ban of the Act and remove from it any presumption of fraud that might be thought to arise from its mere

---

[8] § 305, 49 Stat. 856, 16 U. S. C. § 825d (b).

existence. It would be a strange contradiction between judicial and administrative policies if a relationship which the Commission has declared will not adversely affect public or private interests were regarded by courts as enough to create a presumption of fraud. Perhaps, in the absence of the Commission's approval, such relationship would be sufficient to raise the presumption under state law, but it cannot do so where the federal supervising authority has expressly approved the arrangement.

We need not decide what action the Commission is empowered to take if it believes that a fraud has been committed on itself, for it has taken no action which gives rise to or affects this controversy.

## III.

The entire Court is agreed that the judgment rendered by the District Court cannot stand and all agree that it cannot adjudicate the issues that plaintiff tendered to it. We disagree only as to the consequences of the disability. The majority believe the federal court should dismiss the complaint. A minority urges that we should direct the District Court to refer issues to the Federal Power Commission.

It is true that in some cases the Court has directed lower federal courts to stay their hands pending reference to an administrative body of a subsidiary question. *Smith* v. *Hoboken R. Co.,* 328 U. S. 123; *Thompson* v. *Texas Mexican R. Co.,* 328 U. S. 134; *General American Tank Car Corp.* v. *El Dorado Terminal Co.,* 308 U. S. 422. But in all those cases the plaintiff below concededly stated a federally cognizable cause of action, to which the referred issue was subsidiary. In no instance have we directed a court to retain a case in which it could not determine a single one of its vital issues. Here the issue of reasonableness of the charges is not one clearly severable from the issues of liability, for the acts charged do not amount to

fraud unless there has been an unreasonable charge. Injury is an essential element of remediable fraud. "Deceit and injury must concur." *Adams* v. *Clark,* 239 N. Y. 403, 410, 146 N. E. 642, 644 (1925). See also *Connelly* v. *Bartlett,* 286 Mass. 311, 315, 190 N. E. 799, 801 (1934).

If the court is presented with a case it can decide but some issue is within the competence of an administrative body, in an independent proceeding, to decide, comity and avoidance of conflict as well as other considerations make it proper to refer that issue. But we know of no case where the court has ordered reference of an issue which the administrative body would not itself have jurisdiction to determine in a proceeding for that purpose. The fact that the Congress withheld from the Commission power to grant reparations [9] does not require courts to entertain proceedings they cannot themselves decide in order indirectly to obtain Commission action which Congress did not allow to be taken directly. There is no indication in the Power Act that that was Congress' intent.

It is urged that this leaves petitioner without a remedy under the Power Act. We agree. In that respect, petitioner is no worse off after losing its lawsuit than its customers are if it wins. Unless we are to assume that this company failed to include its buying costs in its selling rates, we must assume that any unreasonable amounts it paid suppliers it collected from consumers. Indeed, this is the assumption made by the Commission in its brief as *amicus curiae* here.[10] It is admitted that, if it recoups again what it has already recouped from the public, there is no machinery in or out of court by which others who have paid unreasonable charges to it can recover.[11]

---

[9] S. Rep. No. 621, 74th Cong., 1st Sess. 20.

[10] Brief for the Federal Power Commission as *amicus curiae,* pp. 13–14.

[11] *Id.,* pp. 14–17.

Under such circumstances, we conclude that, since the case involves only issues which a federal court cannot decide and can only refer to a body which also would have no independent jurisdiction to decide, it must decline the case forthrightly rather than resort to such improvisation.

The judgment below is affirmed upon the ground that the petitioner has not established a cause of action.

*It is so ordered.*

MR. JUSTICE FRANKFURTER, joined by MR. JUSTICE BLACK, MR. JUSTICE REED, and MR. JUSTICE DOUGLAS, dissenting.

The plaintiff, Montana-Dakota Utilities Company, petitioner here, is the successor in interest to several utility companies which distributed electric energy in North and South Dakota. The defendant, Northwestern Public Service Company, served the region to the south of Montana-Dakota's territory. Both corporations have been subject to the Federal Power Act since its enactment in 1935. 49 Stat. 847, 16 U. S. C. § 824 *et seq.* The controversy arises out of relations between the two enterprises prior to 1945. The facts which raise the question whether the Federal District Court had jurisdiction to entertain the suit may be briefly summarized.

After January 1, 1935, all but one of Montana-Dakota's directors were directors of Northwestern, and all of Montana-Dakota's officers were officers of the other company. These interlocking arrangements received formal authorization by the Federal Power Commission, as required by § 305 (b) of the Act. 16 U. S. C. § 825d (b). At different times between 1935 and 1945 contracts were made between the two corporations for the sale of electric energy. All such agreements have to be filed with the Commission, § 205 (c), 16 U. S. C. § 824d (c), but the legality of rates so filed is not conditioned upon the Com-

mission's approval. Unless they are challenged, either by an interested party or on the Commission's initiative, the filed rates become the legal rates. Montana-Dakota now claims, in essence, that for a decade Northwestern, by virtue of its control, deprived Montana-Dakota of the rights which that corporation enjoyed under the Federal Power Act and prevented it from contemporaneously asserting them before the Federal Power Commission. Montana-Dakota was prevented from filing what would have been the lawful rates because Northwestern, as the dominus of Montana-Dakota, filed rates for that company that were less than the reasonable rates to be exacted under the Federal Power Act—rates which would have been determined by arm's length dealing between the two companies. Having secured freedom of action and thereby the power to assert its rights, Montana-Dakota brought this suit in the United States District Court for the District of South Dakota to recoup the losses which it claims were thus imposed on it.

The defendant moved to dismiss the complaint for want of jurisdiction in that it failed to state a claim under federal law. The motion was denied, 73 F. Supp. 149, and the case went to trial. The District Court found unfair dealing in the circumstances of the interlocking relationship and resulting unreasonableness in the rates, and gave judgment for the plaintiff in the sum of $779,958.30, principal and interest.

The Court of Appeals for the Eighth Circuit reversed. It held that the Federal Power Commission "had jurisdiction and was the proper tribunal in the first instance" to determine the reasonableness of the rates and the bearing of fraud practiced on the Commission in securing permission for the interlocking arrangements and the resulting subversion of rights under the Federal Power Act. The court found that "The Commission can, no doubt, correct its own mistakes," but it did not specify

the administrative remedies it deemed available. It concluded that the District Court was without power to entertain the complaint and ordered it dismissed. 181 F. 2d 19, 23. We brought the case here since important issues in the administration of the Federal Power Act are at stake. 340 U. S. 806.

Section 317 of the Federal Power Act in its present form confers on the district courts of the United States "exclusive jurisdiction of violations of this Act or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this Act or any rule, regulation, or order thereunder." 49 Stat. 862, 16 U. S. C. § 825p. There can be no doubt, therefore, that if the complaint, fairly construed in light of the successful determination of the issues, seeks to enforce a duty which the Federal Power Act recognizes, the District Court properly entertained the suit under the jurisdictional provisions of the Act, reinforcing, as they do, the general jurisdictional provisions governing the district courts. See Act of March 3, 1911, § 24 First, Eighth, 36 Stat. 1091, 1092, 28 U. S. C. §§ 1331, 1337.

The Federal Power Act directs that

"All rates and charges made, demanded, or received by any public utility for or in connection with the transmission or sale of electric energy subject to the jurisdiction of the Commission, and all rules and regulations affecting or pertaining to such rates or charges shall be just and reasonable, and any such rate or charge that is not just and reasonable is hereby declared to be unlawful." § 205 (a), 49 Stat. 851, 16 U. S. C. § 824d (a).

We face at the outset the contention that this section confers on the Federal Power Commission authority to award reparations for unreasonable rates collected in the

past.  Federal railroad rate legislation gave such a power to the Interstate Commerce Commission.  Act of Feb. 4, 1887, §§ 9, 16, 24 Stat. 382, 384–385, as amended, 49 U. S. C. §§ 9, 16 (1); cf. Act of Aug. 15, 1921, § 308, 42 Stat. 165, 7 U. S. C. § 209.  But it was not given to the Federal Power Commission.  It was withheld deliberately.  See S. Rep. No. 621, 74th Cong., 1st Sess. 20. Wholesale consumers of electric energy were apparently considered, as a rule, adequately protected by the provisions of the Act authorizing the Commission to grant prospective relief and, in certain circumstances, to order refunding of sums accumulated during the pendency of rate proceedings.  §§ 205 (e), 206 (a), 49 Stat. 852, 16 U. S. C. §§ 824d (e), 824e (a).  Despite the unqualified statutory declaration that unreasonable rates are unlawful, we think it clear that Congress did not intend either court or Commission to have the power to award reparations on the ground that a properly filed rate or charge has in fact been unreasonably high or low.  If that were all the complaint before us showed, we would agree that recovery of damages in a civil action would not be an appropriate remedy, and that the complaint should have been dismissed.

But the case before us is very different.  Montana-Dakota does not assert merely that the rates fixed and filed for it by the defendant were unreasonable.  Montana-Dakota claimed and introduced evidence to show that some contracts required by the Act to be filed were not filed at all; that others were filed months late; and that some were not the bona fide contracts obtained by arm's length negotiation that on their face they appeared to be, but instead were "conceived and put into operation by the defendant and its aforesaid directors and officers for the purpose of exacting large charges from [Montana-Dakota] for the purpose, among other things, of offsetting charges of [Montana-Dakota] for electrical energy gen-

erated in North Dakota and transmitted to and sold to
defendant for resale in South Dakota." See cause 3, ¶ V
of the complaint. Thus the complaint in substance al-
leges that Northwestern misled the Commission into
approving schedules which would not have been approved
had Northwestern complied with the obligations of full
and fair disclosure imposed on it by the Federal Power
Act. While the complaint does not artistically allege
that domination by Northwestern prevented Montana-
Dakota from complaining to the Commission that the
rates and charges were unreasonable, that is its plain
import and the facts were so found at the trial.

We are not here concerned with the complaint insofar
as it sets forth a common-law cause of action based on
misuse of powers by the directors of a controlled corpora-
tion. Such an action by itself of course cannot be brought
in a federal court in the absence of diversity of citizenship
between the parties. But this does not preclude the same
circumstances from giving rise to a cause of action that
has its roots in the Federal Power Act. As such the con-
troversy does fall within the jurisdiction of a federal court.
The essence of this cause of action is that the Federal
Power Act imposed on Northwestern the duty to charge
and pay reasonable rates in its transactions with Montana-
Dakota; and that while under the Act rates appropriately
filed are, when unchallenged, the legal rates and deemed
to be reasonable, in the circumstances here alleged the
schedules and contracts filed were not complete or timely
or bona fide. Since it was coercively controlled, Montana-
Dakota could neither file rates that were truly reasonable
nor protest unreasonable rates filed on its behalf.

The Court of Appeals apparently closed the door of the
District Court to this suit on the assumption that relief
could be had from the Federal Power Commission for the
damage flowing from violation of the Federal Power Act.
Of course a court would not grant relief, at least in the

first instance, if an adequate administrative remedy were available. It is fundamental to federal regulatory legislation that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers* v. *Bethlehem Shipbuilding Corp.*, 303 U. S. 41, 50–51. This principle is particularly relevant to rate regulation. *Texas & Pac. R. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426; *Mitchell Coal Co.* v. *Pennsylvania R. Co.*, 230 U. S. 247; *Armour & Co.* v. *Alton R. Co.*, 312 U. S. 195. Compare *Great Northern R. Co.* v. *Merchants Elevator Co.*, 259 U. S. 285.

But we do not find that the Federal Power Act provides administrative remedies to meet the situation before us. We have seen that that Act does not authorize the Commission to award reparations to those subjected to unreasonable rates. The Act likewise does not afford to the Commission the authority conferred on administrative agencies under other regulatory statutes to award damages to those injured by violations of the Act. Compare Act of February 4, 1887, § 9, 24 Stat. 382, 49 U. S. C. § 9; Act of August 15, 1921, § 309 (e), 42 Stat. 166, 7 U. S. C. § 210 (e). The Power Act, it is true, does give the Commission authority to look into past rates in order to determine whether the Act has been violated. § 307 (a), 49 Stat. 856, 16 U. S. C. § 825f (a). See *Atlantic Coast Line R. Co.* v. *Florida*, 295 U. S. 301, 312. But such an inquiry cannot be made the basis for an administrative award of damages to the victims of the violations. Again, the Commission may, as the Government suggests, have power under the omnibus provisions of § 309 to vacate its approval of a rate when approval has been obtained by fraud. 49 Stat. 858, 16 U. S. C. § 825h. But this does not authorize the Commission to fix rate orders retrospectively. The Commission may establish rates only

"to be thereafter observed and in force." § 206 (a), 49 Stat. 852, 16 U. S. C. § 824e (a).

If the Commission can neither fix rates retrospectively nor award damages, it clearly can afford no adequate remedy to Montana-Dakota. Vacating its acquiescence in the interlocking directorate or in the schedules filed by Northwestern might prevent Northwestern from asserting the approval of the federal agency in an action brought against it under State law; but it would not provide a basis for recovery by the injured party or impose any certain liability on the wrongdoer. We are bound to conclude that the Court of Appeals was in error in thinking that an adequate administrative remedy existed and precluded courts from granting relief.

But we cannot agree that the inability of the Federal Power Commission to grant relief requires that courts be similarly disabled. Courts, unlike administrative agencies, are organs with historic antecedents which bring with them well-defined powers. They do not require explicit statutory authorization for familiar remedies to enforce statutory obligations. *Texas & N. O. R. Co.* v. *Brotherhood of Clerks*, 281 U. S. 548; *Virginian R. Co.* v. *System Federation*, 300 U. S. 515; *Deckert* v. *Independence Shares Corp.*, 311 U. S. 282. A duty declared by Congress does not evaporate for want of a formulated sanction. When Congress has "left the matter at large for judicial determination," our function is to decide what remedies are appropriate in the light of the statutory language and purpose and of the traditional modes by which courts compel performance of legal obligations. See *Board of Comm'rs* v. *United States*, 308 U. S. 343, 351. If civil liability is appropriate to effectuate the purposes of a statute, courts are not denied this traditional remedy because it is not specifically authorized. *Texas & Pac. R. Co.* v. *Rigsby*, 241 U. S. 33; *Steele* v. *Louisville & N. R. Co.*, 323 U. S. 192; *Tunstall* v. *Brotherhood of Locomotive*

*Firemen & Enginemen,* 323 U. S. 210; cf. *De Lima* v. *Bidwell,* 182 U. S. 1.

That civil liability is an appropriate remedy in the situation before us is attested alike by the words of the statute, by the force of familiar principles of liability, and by practical considerations in carrying out legislative objectives.

The Power Act is explicit that any "rate or charge that is not just and reasonable is hereby declared to be unlawful." § 205 (a), 49 Stat. 851, 16 U. S. C. § 824d (a). The aim of Congress would be needlessly aborted if this "definite statutory prohibition of conduct" did not impose civil liability in a situation not covered by administrative remedies merely because no judicial relief was explicitly authorized. Compare *Texas & N. O. R. Co.* v. *Brotherhood of Clerks, supra,* at 568. The right of civil recovery by persons compelled to pay unreasonable or discriminatory rates to common carriers is one of the oldest forms of relief in our law. *Western Union Tel. Co.* v. *Call Publishing Co.,* 181 U. S. 92. To enforce a remedy for collection of unreasonable charges in the situation before us, therefore, would recognize deeply-rooted law; to deny it would be inconsistent with long-established judicial practice. The experience of the Commission indicates that the statute itself, by virtue of the positive duties it commands, under normal circumstances is very largely its own sanction.[1] Want of explicitness in providing a familiar remedy for the rare case of disobedience should not be construed a denial of it.

---

[1] Data supplied by the Commission show that rate reductions proposed by utilities invariably become effective as filed. More than half of the rate increases likewise become effective automatically as filed. Those which are suspended by the Commission are as a general rule withdrawn, modified, or approved after informal conferences between the parties and the Commission's staff.

To leave relief to the diverse and conflicting State law dealing with intercorporate relations would make for conflicting local administration of an important national problem. This Court has recently shown marked reluctance to leave to the States determination of even State law questions involved in the administration of the Federal Power Act. *First Iowa Cooperative* v. *Federal Power Commission,* 328 U. S. 152. What is involved here—the frustration, by misuse of the machinery of the Federal Power Act, of the command of Congress that rates be reasonable—has a federal character and significance. We do not think it likely that Congress intended that there should be no relief for this kind of tampering with the federal regulatory scheme other than that which might be afforded by the corporation law of the forty-eight States.

We could attribute such a purpose to Congress only if to allow civil relief in the situation before us would interfere with the administrative remedies contemplated under the Act, or impose on courts alien responsibilities or duties they are not equipped to fulfill. No such consequence is remotely involved in utilizing this age-old remedy. The statute is based on the assumption that unlawful rates will ordinarily be promptly corrected at the initiative of injured parties permitted to resort to the Commission for prospective relief. § 306, 49 Stat. 856, 16 U. S. C. § 825e. That procedure is not available when the wrong asserted is that the defendant corporation has established unlawful schedules by fraudulent domination of the utility with which it transacts business. To grant judicial relief for such a wrong will not interfere with the remedial procedure to which the Act confines corporations which are their own masters.

Nor will it transfer to the courts responsibility for deciding questions which should properly be presented to the Power Commission. In a variety of situations we have

264

recently emphasized the principle that courts and agencies "are to be deemed collaborative instrumentalities of justice." *United States* v. *Morgan,* 313 U. S. 409, 422, 307 U. S. 183; *Palmer* v. *Massachusetts,* 308 U. S. 79. To that end it is established practice that courts may entertain actions brought before them, but call to their aid the appropriate administrative agency on questions within its administrative competence. See *Smith* v. *Hoboken R. Co.,* 328 U. S. 123; *Thompson* v. *Texas Mexican R. Co.,* 328 U. S. 134; cf. *United States Alkali Assn.* v. *United States,* 325 U. S. 196, 210. In the *El Dorado Oil Works* litigation we held that proper procedure required the District Court to entertain a suit on a contract but to look to the Interstate Commerce Commission for guidance as to transportation practices involved in carrying out the contract. *General American Tank Car Corp.* v. *El Dorado Terminal Co.,* 308 U. S. 422, 433; *El Dorado Oil Works* v. *United States,* 328 U. S. 12. The fact that the Federal Power Commission is not itself authorized to award damages does not disable it from advising a court on questions on which its judgment is needed. See *United States* v. *Morgan, supra; Atlantic Coast Line R. Co.* v. *Florida, supra,* at 312. We see no reason why the Commission's findings should not be sought here.

We think, therefore, that a cause of action within the jurisdiction of the district courts is stated by a complaint charging a distributor of electric energy at wholesale in interstate commerce (1) with buying or selling at unreasonable rates, (2) with failure to comply with procedural requirements of the Federal Power Act, and (3) with preventing others from resorting to the remedies afforded by that Act. In such cases the district court should stay proceedings and request determination by the Federal Power Commission of matters within the Commission's special competence. It is within the Commission's domain to rule whether filed rates should not,

in view of all relevant circumstances, be considered "reasonable" rates. It also falls to the Commission to decide what would have been the reasonable rates. The opinion of the Commission, being "only a preliminary, interim step" towards final judgment, would not be a reviewable order under § 313 (b) of the Act, but would be reviewed only as a part of the judgment entered by the district court. *Federal Power Comm'n* v. *Hope Natural Gas Co.*, 320 U. S. 591, 618, 619.

The objections raised to this procedure have apparently not been considered substantial by the Federal Power Commission, the body primarily charged with administration of the Act.[2] We do not think they should prevail. The function of the District Court is not simply to serve as a façade behind which the Commission is enabled to accomplish indirectly what it cannot do directly. Certain issues of fact—the completeness of disclosure, for instance, or the loyalties of the directors— are properly for the court. Action by the court may similarly be required in determining the appropriate disposition of the fund. See *Federal Power Comm'n* v. *Interstate Natural Gas Co.*, 336 U. S. 577, 181 F. 2d 833. Recovery by Montana-Dakota need not be a windfall to that company. Many changes in costs charged utilities are not reflected in prices they may collect. Compare *St. Louis & O'Fallon R. Co.* v. *United States*, 279 U. S. 461, 488, 505–509 (Mr. Justice Brandeis, dissenting). To the extent that Montana-Dakota has passed on its loss to its customers, they may be permitted recovery from it on well-established principles of unjust enrichment. And even if the effect of awarding relief is ultimately to benefit Montana-Dakota, it certainly has a better claim to the exacted funds than Northwestern.

[2] In its brief here the Commission urged adoption of substantially the ground set forth in this opinion.

266

The procedure here outlined is not unlike that which the Court employed in *United States* v. *Morgan, supra,* where a similar demand was made on the resourcefulness of law to find a remedy to meet an unusual situation. Such a remedy not only defeats unjust enrichment as between private parties. This is accomplished in the public interest of effectuating the Federal Power Act.

Because we conclude that the District Court, while correct in refusing to dismiss the complaint, should have asked the Federal Power Commission to determine matters peculiarly within its competence and report its finding to that court, we think the case should be remanded to that court for further proceedings not inconsistent with this opinion. We do not, of course, intimate any opinion as to the sufficiency of the evidence to support the conclusion that the filed rates in this case should not be deemed lawful. Nor would we restrict any appropriate use the Commission might wish to make of evidence adduced at the trial.