**INGLEWOOD FEDERAL SAVINGS & LOAN ASS'N et al.**

**v.**

**RICHARDSON et al.**

No. 16096.

United States District Court,
S. D. California, C. D.
April 28, 1954.

FitzPatrick & Whyte, John P. Whyte, Los Angeles, Cal., for plaintiffs.

William F. McKenna, Los Angeles, Cal., and Robert H. Finch, Inglewood, Cal., for B. K. Richardson, J. R. Williams, and Al E. Kadner, original defendants.

William F. McKenna, Los Angeles, Cal., and Robert H. Finch, Inglewood, Cal., for Charles Bellante, Dan Williams, Roy A. Patterson, Marion Cunningham, Fletcher Smith and Mac McMann, named as Doe defendants in the original complaint.

William F. McKenna, Los Angeles, Cal., and Robert H. Finch, Inglewood, Cal., for Russell Chase, Joseph Wall, Alan Rice and F. M. Van Norman.

Charles K. Chapman, Long Beach, Cal., for George W. Trammell.

Sylvester Hoffmann, Los Angeles, Cal., Walter S. Binns, Moore, Trinkaus & Binns, Los Angeles, Cal., for Home Loan Bank Conservator, John M. Kleeb, as Conservator for Inglewood Federal Sav. & Loan Ass'n.

TOLIN, District Judge.

The complaint and counter-claims herein assert several causes of action designed to litigate various questions of management and control of plaintiff Savings and Loan Association. Plaintiff is chartered under Section 5 of the Home Owners' Loan Act of 1933, 12 U.S.C.A. § 1464. The Court has directed that the several causes of action stated in the complaint and counter-claims be dismissed because jurisdiction to determine the various controversies is exclusively with the Federal Home Loan Bank Board. The Court's Memorandum was filed April 16, 1954. The formal order of dismissal has not been signed and the Court is now concerned with its duties and powers respecting compensation for a conservator and his attorney appointed by the Court to act during a brief *pendente lite* period. This action was originally filed in the Superior Court of the State of California where a temporary restraining order was issued prohibiting defendants from doing several threatened acts. The suit was removed to this Court. Primarily, the case involves a quarrel between two factions, each seeking control of Inglewood Federal Savings and Loan Association.

Following removal and after a period of less than one week, counsel for plaintiffs and counsel for some of the defendants appeared together in the Chambers of this Court on a Friday morning, peremptorily and without previous announcement to the Judge. Each of the warring factions insisted, through such counsel, that it was the true and lawfully elected directorate of the Corporation and each counsel asked the Judge informally whether he would entertain motions for extraordinary writs, each side asserting unlawful action by the other in current corporate management. It appeared that two groups of persons severally and antagonistically claimed to be the real directors and officers, each claiming to be entitled to sole possession, management and control of the assets including the going, active, home loan banking business of the Association, together with its savings accounts. It was represented to the Court that each of these groups were in possession of the Association's *building; that they slept* in the banking rooms, took meals there, *sought to (and did) manage the physical* properties and banking business. There was great confusion. Semi-violence flared. Riot was prevented only by local municipal police action. Conflicting orders were given personnel. Commercial banks were about to dishonor checks because of lack of knowledge of which group of officers were entitled to sign checks. Depositor confidence was so shaken that a run had begun. It was apparent that the Association had been unable to, or at least had not, properly regulated the conduct of this fight for control of the Association; and at the time it had sought the protection of judicial process, its banking rooms had become a scene of confusion, bedlam and lack of depositor confidence, some elaboration of which is set forth in the stenographic report of proceedings in this case.

When the Judge indicated a tentative view that the case was one for administrative action by the Home Loan Bank Board in Washington, D. C. and was not within the jurisdiction of this Court, one group of litigants claimed that the administrative remedies had been exhausted and that jurisdiction vested in the Court. Both groups asserted that the Home Loan Bank Board was without a quorum of officials available for action until the following Monday. Each group claimed that the Court should preserve the integrity of the institution. It was pointed out that over one-half of the Friday banking day, a half-day banking day on Saturday, and Monday morning

were in prospect as ordinary business periods during which the Association was required by law to be open for business and prior to the earliest expected availability in Washington, D. C. of the proper supervising agency.

The Court declared that it would, upon the first available occasion, proceed to inquire into and determine whether it had jurisdiction over the matters either as claimed or otherwise. The Court further announced that, in the interval, until such determination was made, it would not entertain the suggested applications for various extraordinary writs; but that, in view of the immediately critical situation and for the purpose of maintaining the assets and integrity of the Association, the Court would appoint a conservator, with an attorney to advise him, said conservator to operate the business while the Court exercised its jurisdiction to inquire if it had jurisdiction of the controversy and formally considered various motions already noticed. Such conservator was promptly appointed and actively managed the affairs of the Association until the appearance of a conservator appointed by the Federal Home Loan Bank Board, the following Monday noon.

The Court has examined the question of its jurisdiction and has determined, but not yet ordered, that this cause should be dismissed for want of jurisdiction. Power to try the case would not arise at least before exhaustion of administrative remedies. It is now suggested, but not directly litigated, that the Court, lacking power to adjudicate the main controversy, also was without jurisdiction to appoint the conservator and to now provide for compensation to him and his attorney. We cannot agree with this suggestion.

■ On an assertion of jurisdiction, a Federal District Court, to determine whether the contention is well founded, must take jurisdiction, whether its ultimate resolution is to be in the affirmative or the negative. See Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 71 S.Ct. 692,

95 L.Ed. 912. The Court also has the power to order payment of costs in matters dismissed for lack of jurisdiction. Title 28 U.S.C. § 1919:

> "*District courts; dismissal for lack of jurisdiction*
>
> "Whenever any action or suit is dismissed in any district court for want of jurisdiction, such court may order the payment of just costs. June 25, 1948, c. 646, 62 Stat. 955."

See Phoenix-Buttes Gold Mining Co. v. Winstead, D.C.Cal.1914, 226 F. 863.

Under the circumstances present in this case, a court would be remiss if it did not exercise its power to maintain the *status quo* of the business and its assets as an adjunct to the principal litigation. It did so only while determining whether it had jurisdiction and for the sole purpose of protecting the depositors and shareholders in the Inglewood Federal Savings and Loan Association at a time when the appropriate administrative agency was unavailable to afford protection by appointment of a conservator or otherwise.

■ As to the amount and burden of such costs, the Court's language in In re Northern Indiana Oil Co., 7 Cir., 192 F.2d 139, 142, is particularly appropriate:

> "In equity, however, the awarding of costs depends largely upon the facts and circumstances of each particular case and rests within the discretion of the court. 7 R.C.L., 783–784. Unless otherwise provided by statute or rules of court, costs in equity do not always follow the outcome of the suit; they rest in the sound discretion of the court according to the justice of the cause or the facts and circumstances of the particular case (14 Am.Jr. 16)."

■ This Court appointed as conservator Mr. Thomas Mulherin, a Certified Public Accountant familiar with business enterprises of the sort involved, with directions to restore peace and operate the Association's business until further order. Mr. Mulherin immediate-

ly took over active management of the Association. He was in complete active control the balance of Friday, Saturday morning, and until approximately 11:00 a. m. Monday when a conservator appointed by the Federal Home Loan Bank Board appeared, at which time the Court ordered its conservator to deliver the control of the business to such conservator.

In the meantime, Mr. Mulherin had restored order and peace to the banking organization and had arranged for the continuous current conduct of the business. He had brought about a cessation of the run and otherwise preserved and sequestered the assets of the Association, ousting both contending factions from the premises and restoring credit with commercial banks. He effectively invoked the aid of the press in restoring the confidence of the public in the Association. He arranged for the honoring of certain outstanding checks previously issued by the Association and for obtaining some $30,000 in currency to be used in the normal course of Monday's business. He cleared up numerous inconsistencies in instructions to other banks and to employees of the Association. He gave instructions to the manager of a branch office. He took numerous active steps with regard to security measures, changing locks and combinations. He solicited the aid of Federal Home Loan Bank representatives in conducting intermediary affairs and in securing a permanent conservator. He caused statements and audits to be prepared verifying current statements. The Association had over $26,000,000 in capital. Finally he cooperated with, and assisted, the Home Loan Bank Board's conservator in relieving him.

The conservator and his attorney stepped into a very difficult situation, the handling of which called for great tact as well as familiarity with the business practices of associations of the kind here involved. Neither of the persons appointed sought the appointment and, at the request of the Court, put aside their normal, profitable pursuits while attending to the immediate emergency with which they were asked to deal.

The conservator is awarded $2,000. The conservator's attorney is awarded $1,000.

Under all the circumstances of this case, it is just that the Association, which is itself equivalent to a corporate entity, having been unable to control itself sufficiently to avoid the emergency, shall pay such costs.

The attorney for the conservator will submit findings of fact, conclusions of law, and an appropriate order within five days.