OGLALA SIOUX TRIBE OF THE PINE RIDGE RESERVATION, S. D., and Frank G. Wilson, Plaintiffs,

v.

Albert J. BARTA, John E. Barta, and Charles K. Failing, Defendants.

OGLALA SIOUX TRIBE OF THE PINE RIDGE RESERVATION, S. D., and Frank G. Wilson, Plaintiffs,

v.

Clair COOMES and A. R. Davies, Defendants.

Civ. Nos. 600, 601.

United States District Court
D. South Dakota, W. D.

Nov. 8, 1956.

H. R. Hanley, of Hanley & Costello, Rapid City, S. D., and Richard Schifter, of Strasser, Spiegelberg, Fried & Frank, Washington, D. C., for plaintiffs.

John C. Farrar, of Gunderson, Farrar & Carrell, Rapid City, S. D., for defendants.

MICKELSON, Chief Judge.

The defendants in both of these cases have moved to dismiss the actions brought by the Oglala Sioux Tribe and Frank G. Wilson, a member of said tribe and its president, in behalf of himself and all members of the tribe similarly situated, to collect a tax levied by the tribe upon non-members leasing tribal land. The defendants question the jurisdiction of this Court to entertain the actions. The plaintiff tribe was organized under the Indian Reorganization Act, 48 Stat. 984, as amended, 25 U.S.C.A. § 476. The authority to levy the tax is found in Article IV, Sec. 1(h), of the Tribal Constitution, and the validity of the tax was sustained by this Court in the case of Iron Crow v. Ogallala Sioux Tribe, D.C., 129 F.Supp. 15, affirmed 8 Cir., 231 F.2d 89.

The jurisdiction of this Court is invoked under 28 U.S.C.A. § 1331, which reads as follows:

"The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $3,000, exclusive of interest and

costs, and arises under the Constitution, laws or treaties of the United States."

The amount in controversy in each case exceeds the sum of $3,000, exclusive of interest and costs, so that the remaining question is whether the action is one arising under the Constitution, laws or treaties of the United States.

The Oglala Sioux Tribe in 1956 functions under the provisions of the Indian Reorganization Act and Federal Statute, 25 U.S.C.A. § 476. As stated by this Court in Iron Crow v. Ogallala Sioux Tribe, supra [129 F.Supp. 24]:

"The government of the Ogallala Sioux Tribe is organized under the provisions of the Indian Reorganization Act."

And as stated by the Circuit Court of Appeals in affirming the decision of this Court in that case [231 F.2d 99]:

"We conclude from the original precept of tribal sovereignty and the fact that the power of the Oglala Sioux Tribe to impose the tax or license in question * * * has been implemented by the Indian Reorganization Act * * *, that such power still exists."

Thus the rights derived from original sovereignty have been directly channeled into a Federal statutory scheme and all tribal powers are exercised under Federal law. The plaintiffs' Tribal Constitution was not adopted under rules established by tribal custom, but rather under authority granted by the Congress of the United States, namely, the Indian Reorganization Act.

In support of defendants' position that the authority of an Indian nation is an inherent attribute of original tribal sovereignty, and thus not arising under the laws of the United States, they cite and rely upon the cases of Crabtree v. Madden, 8 Cir., 1893, 54 F. 426, and Buster v. Wright, 8 Cir., 1905, 135 F. 947. In Buster v. Wright, 135 F. at page 950, the Court said:

"The authority of the Creek Nation to prescribe the terms upon which noncitizens may transact business within its borders did not have its origin in act of Congress, treaty, or agreement of the United States. It was one of the inherent and essential attributes of its original sovereignty."

The Crabtree case, decided prior to Buster v. Wright, determined that the United States Court in the Indian Territory had no jurisdiction to entertain an action to collect taxes levied by the Creek Tribe upon non-members of the tribe.

We think the above cases were decided correctly and take no issue with them. The Creek Nation involved in the two cases above cited possessed full original tribal sovereignty over its domestic relations, and its governmental scheme was established by treaty.[1] It did not purport to exist and function under any Federal law. The Indian Reorganization Act was enacted in 1934, many years after the decisions in the above cited cases. The plaintiff Oglala Sioux Tribe in the cases at bar functions under the provisions of this Act, thus the cases cited are not controlling authority here.

■■ Under the authority of Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 1951, 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912, a case which arose in this jurisdiction, it appears that when an action involves a controversy respecting the effect of an act of Congress, this Court must assume jurisdiction to determine if the claim is well grounded. Stating, 341 U.S. at page 249, 71 S.Ct. at page 694:

"To determine whether that claim is well founded, the District Court

---

1. Treaty of 1866, 14 Stat. 785. Article 1:
   "There shall be perpetual peace and friendship between the parties to this treaty, and the Creeks bind themselves to remain firm allies and friends of the United States, and never to take up arms against the United States, but always faithfully to aid in putting down its enemies."

must take jurisdiction, whether its ultimate resolution is to be in the affirmative or the negative. If the complaint raises a federal question, the mere claim confers power to decide that it has no merit, as well as to decide that it has. In the words of Mr. Justice Holmes, ' * * * if the plaintiff really makes a substantial claim under an act of Congress there is jurisdiction whether the claim ultimately be held good or bad.' The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S. Ct. 410, 412, 57 L.Ed. 716."

See also South Side Theatres v. United West Coast Theatres Corp., 9 Cir., 178 F.2d 648.

■ The defendants raise the additional point of the capacity of the plaintiff tribe to bring these suits. The United States Supreme Court has answered the question of the right of an Indian tribe to sue on its own behalf in Creek Nation v. United States, 1943, 318 U.S. 629, 63 S.Ct. 784, 87 L.Ed. 1046. That case, brought under a jurisdictional act permitting suit against the United States, was based on the contention that the United States had breached its obligation toward the Creek Nation by failing to collect sums allegedly due said nation from certain railroads. In affirming a decision dismissing the case, the Court stated, 318 U.S. at page 640, 63 S.Ct. at page 789:

"That the government did not mean to assume an insurer's responsibility for the payment of sums claimed by the Indians against the railroads is further shown by the fact that the Indians retained their own independent remedy for wrongs done them. The tribes have not yet been dissolved, and they have had, *both as a general legal right* and by virtue of the very section of the 1906 Act under discussion here, the power to bring actions on their own behalf. That the United States also had a right to sue did not necessarily preclude the tribes from bringing their own actions." (Emphasis supplied.)

A later case upholding the legal capacity of Indian tribes to sue in their own name is Choctaw and Chickasaw Nations v. Seitz, 10 Cir., 1951, 193 F.2d 456.

It therefore follows that the defendants' motions to dismiss will be, and are, hereby denied. Defendants may have 15 days from the date of this memorandum decision within which to serve and file their answers. Counsel for plaintiff in each of these cases will prepare and submit a proposed order denying defendants' motions to dismiss.

In view of the conclusions reached as to defendants' motions to dismiss, the Court will reserve its ruling on plaintiffs' motions for summary judgment until after defendants have served and filed their answers.