COMMONWEALTH OF MASSACHU-
SETTS, DEPARTMENT OF PUB-
LIC UTILITIES, Petitioner,

v.

UNITED STATES of America, Federal
Energy Regulatory Commission,
Respondent.

Western Massachusetts Electric
Company, Intervenor.

No. 83–1542.

United States Court of Appeals,
First Circuit.

Argued Jan. 3, 1984.

Decided March 15, 1984.

Thomas A. Barnico, Asst. Atty. Gen., Government Bureau, with whom Francis X. Bellotti, Attorney General, and James W. Stetson, Staff Counsel, Massachusetts Dept. of Public Utilities, Boston, Mass., were on brief, for petitioner.

Joanne Leveque, Atty., with whom Stephen R. Melton, Acting Gen. Counsel, and Barbara J. Weller, Deputy Sol., Washington, D.C., were on brief, for respondent.

Samuel Huntington, and Thomas G. Robinson, Westborough, Mass., on brief, for New England Power Co., amicus curiae.

Robert P. Wax, with whom Philip M. Small, Hartford, Conn., was on brief, for intervenor.

Before COFFIN and BREYER, Circuit Judges, and PETTINE,* Senior District Judge.

BREYER, Circuit Judge.

Massachusetts objects to a particular rate-setting practice used by the Western Massachusetts Electric Company. The practice falls within the regulatory jurisdiction, not of Massachusetts, but of the Federal Energy Regulatory Commission; it is embodied in a private utility agreement, which FERC has approved. Massachusetts told the utility to seek FERC's approval to change the rule. The utility filed a notice of change with FERC, in accordance with the procedures contained in § 205 of the Federal Power Act, 16 U.S.C. § 824d. FERC rejected the proposed change, because it believed that this particular statutory provision governs changes that the utility itself proposes, not those that a state regulator requires it to propose. If Massachusetts objects to the rule, says FERC, it should file a complaint in accordance with a different statutory procedure, namely, that contained in § 206 of the Federal Power Act, 16 U.S.C. § 824e. Massa-

___

* Of the District of Rhode Island, sitting by designation.

chusetts appeals FERC's decision. We find that FERC was right.

The procedural dichotomy here involved—between §§ 205 and 206—is often found in statutory schemes of public utility rate regulation—regulation that typically consists of a public commission's review of a private utility's rates and practices to determine whether they are reasonable. Both state and federal regulatory statutes often provide two different "tracks" for review. The first allows the commission, acting either on its own initiative or after a complaint, to change *existing* utility rate practices. To do so, the commission or the complainant must prove that the practices are unreasonable. The existing rates stay in effect while the proceedings take place; and, typically, the utility has no obligation to give customer refunds, even if the rates are found unreasonably high. The second track allows the commission to review *changes* that the utility intends to make. Typically, the commission may suspend the proposed change for a few months; then, if the proceedings are not yet finished, the change takes effect, subject to a refund obligation if the change is found unreasonable. *See, e.g.,* 15 U.S.C. §§ 717c–717d (natural gas); 49 U.S.C. §§ 10704, 10708 (rail carriers with market dominance); Ill. Stat. ch. 111⅔, §§ 36, 41; Mass.Gen.Laws ch. 164, §§ 93–94; N.H.Stat. §§ 378:7, 8; Ohio Code §§ 4909.15, 4909.18; 66 Pa.C. S.A. §§ 1308–09, R.I.Gen.Laws §§ 39–3–11,–12.

The first of these tracks is here found in § 206 of the Federal Power Act. It states that

[w]henever the Commission, after a hearing had upon its own motion or upon complaint, shall find that any rate ... or ... any rule, ... practice, or contract affecting such rate ... is ... unreasonable ..., the Commission shall determine the ... reasonable rate, ... practice, or contract ... and shall fix the same by order.

16 U.S.C. § 824e(a). The second of these tracks is here found in § 205 of the Federal Power Act. It states that

every public utility shall file with the Commission ... schedules showing all rates and ... practices ... and ... contracts which ... relate to such rates .... [N]o change shall be made ... except after sixty days' notice .... Such notice shall be given by filing with the Commission ... new schedules .... Whenever any such new schedule is filed the Commission shall have authority ... to enter upon a hearing concerning the lawfulness [of the changes] ...; and, pending such hearing and the decision thereon, the Commission ... may suspend the ... [new] schedule ... [for no longer than] five months .... If ... an order [has not been] made at [the end of] ... five months, [the changes] ... shall go into effect ..., but in case of a proposed increased rate or charge, the Commission ... [may require a refund of any] portion of such increased rate[ ] ... as by its decision shall be found not justified. At any hearing involving [a rate increase], the burden [of proving an increase] just and reasonable shall be upon the public utility ....

16 U.S.C. § 824d(c)–(e). In essence, FERC says that Massachusetts should use the first track to obtain review of the utility's contractual rate rule; Massachusetts in "order[ing] the Company to petition FERC for an amendment" essentially tried to use the second track by telling the utility to file a "new schedule" containing the changes it desired.

The specific narrow statutory question before us is whether § 205 applies to this type of regulator-compelled rate change. Do the § 205 statutory words "change," "such new schedule," and so forth, include *this* type of change or "new schedule?" The words of the statute do not themselves resolve the problem, for one might read them either as including or excluding the type of "utility-proposed" change here at issue. FERC says that they do not include

this type of change. We are fully aware of the special attention that a court should pay to an agency's interpretation of its own authorizing statute, *NLRB v. Hendricks County Rural Electric Membership Corp.*, 454 U.S. 170, 177, 102 S.Ct. 216, 222, 70 L.Ed.2d 323 (1981); *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 100 S.Ct. 790, 796, 63 L.Ed.2d 22 (1980); *Ford Motor Co. v. NLRB*, 441 U.S. 488, 495, 99 S.Ct. 1842, 1848, 60 L.Ed.2d 420 (1979); *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 274–75, 94 S.Ct. 1757, 1761–1762, 40 L.Ed.2d 134 (1974), particularly when the subject matter is one of proper procedure necessary to facilitate the agency's work, *see Oldham v. Secretary of Health and Human Services*, 718 F.2d 507, 510 (1st Cir.1983). And here there is more than sufficient support for FERC's interpretation.

For one thing, FERC's interpretation is more consistent with the purposes of the entire procedural scheme. Like most traditional regulatory schemes, the two provisions together allow the utility the choice among various reasonable rate practices. Unless the Commission can prove that an existing rate practice is unreasonable, the utility's previously filed rate practice may remain in effect. Similarly, the utility may change any rate practice so long as it can prove that the proposed change is reasonable. To accept Massachusetts' claim that § 205 includes "regulator-compelled" utility-proposed changes would prevent the utility from choosing among reasonable rate-practice alternatives.

For another thing, Massachusetts' interpretation threatens confusion, possibly chaos. What is to prevent each state in a multistate service area from requiring the utility to file a *different* set of "reasonable" rate practices with FERC? Neither law nor economics can identify one unique set of rates or practices as "reasonable," *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 U.S. 246, 251, 71 S.Ct. 692, 695, 95 L.Ed. 912 (1951), and each state would prefer a rate structure that benefitted its residents to the detriment of its neighbors. (The substan-

tive issue underlying this case appears to concern the proper allocation of costs between Connecticut and Massachusetts customers.) FERC perhaps could sort out consequent confusions, but requiring it to do so has a procedural cost; in addition, the accompanying uncertainty could raise capital costs to the detriment of the very consumer whom the regulatory statute seeks to protect.

Furthermore, the net effect of accepting Massachusetts' argument is to allow a state to do what FERC itself cannot, namely, to change an *inter*state rate practice that FERC has not found unreasonable. In analogous circumstances, the Supreme Court has forbidden others to exercise powers denied FERC but within FERC's general area of authority. *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 579–80, 101 S.Ct. 2925, 2927, 69 L.Ed.2d 856 (1981) (court cannot, through breach-of-contract action, permit collection of rate other than that on file with Commission); *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 U.S. at 254, 71 S.Ct. at 696 (court cannot grant, on grounds of fraud and deceit, reparations for allegedly unreasonable past rates on file with Commission).

Finally, if Massachusetts is right, FERC could suspend the change for five months (under § 205), but, if the proceeding were then still pending, FERC would have to allow the change to take effect. Suppose that sometime after five months FERC concludes that the Massachusetts-inspired change unreasonably favors Massachusetts customers at the expense of those in Connecticut. The utility would have to refund amounts overcharged to Connecticut consumers but could not then recover the unreasonable "undercharge" from those in Massachusetts. *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. at 578 & n. 8, 580, 101 S.Ct. at 2931 & n. 8. Section 205 provides only for overcharge refunds, perhaps because a utility, *acting on its own*, is unlikely to propose a rate that unreasonably deprives it of sufficient revenue.

Given the practical difficulties that the Massachusetts interpretation may well create, it is not surprising that Massachusetts has been unable to find directly supporting authority arising under any of the many statutory schemes that embody this type of two-track system. *See, e.g.,* 15 U.S.C. §§ 717c–717d (natural gas); 49 U.S.C. §§ 10704, 10708 (rail carriers with market dominance); Ill.Stat. ch. 111⅔, §§ 36, 41; Mass.Gen.Laws ch. 164, §§ 93–94; N.H. Stat. §§ 378:7, 8; Ohio Code §§ 4909.15, 4909.18; 66 Pa.C.S.A. §§ 1308–09; R.I.Gen. Laws §§ 39–3–11,–12. These difficulties are sufficient to convince us that FERC's interpretation of its own statute is correct, and its order is

*Affirmed.*