**WILLISTON BASIN INTERSTATE PIPELINE COMPANY, Petitioner**

**v.**

**FEDERAL ENERGY REGULATORY COMMISSION.**

No. 88–1105.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 27, 1989.

Decided May 16, 1989.

Petition for Review of Orders of the Federal Energy Regulatory Commission.

Robert T. Hall, III, New York City, with whom Paul K. Sandness, Bismarck, N.D., and Stephen L. Huntoon, Washington, D.C., appeared on the brief, for petitioner.

Frank R. Lindh, Atty., Washington, D.C., F.E.R.C., with whom Catherine C. Cook, Gen. Counsel, and Joseph S. Davies, Deputy Sol., F.E.R.C., appeared on the brief, for respondent.

Before WALD, Chief Judge, MIKVA, Circuit Judge, and GREENE,* District Judge.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge.

This case illustrates the mischief of footnotes and convoluted filings. Williston Basin Interstate Pipeline Company ("Williston") seeks review of orders of the Federal Energy Regulatory Commission ("FERC" or "Commission") directing it to refund certain overcharges resulting from improper calculation of customer balances under its purchased gas account. Because

---

* The Honorable Harold H. Greene, of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

Williston's effective tariff sheets, filed and approved by the Commission, clearly state (albeit in a footnote) that the rates at issue were not to include purchased gas adjustment surcharges, we hold that the Commission erred in ordering the refunds. Accordingly, we grant the petition for review, vacate the relevant portions of the orders under review, and remand for further proceedings, if any.

## I.

Purchased gas adjustment ("PGA") filings permit natural gas pipeline companies to adjust their rates periodically to reflect changes in the price of purchased gas. *See* 18 C.F.R. § 154.301–.310; *Panhandle Eastern Pipe Line Co. v. FERC*, 777 F.2d 739, 742 (D.C.Cir.1985). The PGA rules require a pipeline company to bill its customers for predicted gas costs for an upcoming period and to charge or refund, by means of "surcharge adjustments," the difference between its actual costs and previously projected costs. The monthly balances in a given PGA period are also adjusted for interest payments, or "carrying charges," such that the pipeline company receives interest on positive (underrecovered) balances and owes interest on negative (overrecovered) balances.

### A. *Facts*

Williston is an interstate pipeline company that produces, purchases, transports, and sells natural gas in Montana, Wyoming, North Dakota, and South Dakota. It was created on January 1, 1985 as a wholly owned subsidiary of MDU Resources Group, Inc., formerly known as Montana–Dakota Utilities Company ("MDU"), to separate MDU's integrated intrastate and interstate operations. Under the restructuring, MDU's prior retail sales became sales for resale from Williston to MDU, and MDU's prior sales for resale became Williston's sales for resale. Thus, after January 1, 1985, all of Williston's sales were interstate sales for resale regulated by FERC, and all of MDU's sales were intrastate retail sales regulated by state regulatory commissions.

Although the orders on review in this case were issued in 1987 and 1988, the dispute has its genesis in earlier events. On August 16, 1982, to effect the transfer of MDU's FERC jurisdictional facilities and operations to Williston, Williston and MDU filed with the Commission a joint application for certificate authority under section 7 of the Natural Gas Act, 15 U.S.C. § 717f. As required by the Commission's regulations, *see* 18 C.F.R. Part 157, the application contained extensive supporting exhibits describing the proposal. In a separate volume entitled "Tariff," Williston and MDU proposed by means of "pro forma" tariff sheets to cancel MDU's previously existing rate schedules and substitute essentially identical schedules under Williston's name. The proposed tariff contained rates for sales by Williston to MDU for resale to MDU's retail customers, but did not mention PGA surcharges for those rates.

On June 15, 1984, Williston and MDU filed with the Commission a proposed settlement agreement to resolve disputed issues in the certificate proceedings. This agreement, and a subsequently attached pro forma rate sheet, was also silent on the issue of PGA surcharges between Williston and MDU. On November 19, 1984, the Commission rejected the proposed settlement on the ground that it would effect a large increase in rates without a sufficient evidentiary basis. *See* 29 F.E.R.C. ¶ 61,204 (1984).

On January 10, 1985, Williston and MDU filed a revised settlement agreement. Although the body of the revised settlement also failed to discuss PGA surcharge adjustments, this time an attached "Pro Forma Original Sheet No. 5" contained a new footnote "E" that did cover the question of the purchase gas adjustment surcharges; it stated: "Rates for sales to Montana–Dakota Utilities Co. through April 30, 1985 will not reflect the Current Surcharge Adjustment." The Commission approved the revised settlement on February 13, 1985, finding that it cured the defects found in the original settlement. *See* 30 F.E.R.C. ¶ 61,143 (1985).

On February 20, 1985, Williston filed its official "FERC Gas Tariff, Volumes 1 and 2." This tariff filing also included a pro forma rate sheet ("Original Sheet No. 10") that contained the same footnote "E" that appeared in the attachment to the revised settlement agreement. On March 11, 1985, the Commission accepted these rates, to be effective January 1, 1985.

On February 22, 1985, Williston filed an "out-of-cycle" PGA that included a "Substitute Original Sheet No. 10," which again contained the footnote regarding the exclusion of PGA surcharges in rates for sales to MDU. The Commission accepted this filing on March 20, 1985, subject to certain conditions not relevant here. See 30 F.E.R.C. ¶ 61,312 (1985).

Finally, on March 28, 1985, Williston filed with the Commission a "Second Substitute Original Sheet No. 10," which once again contained the same footnote that had appeared in previous filings. By letter dated April 26, 1985, the Commission accepted this filing as well.

### B. The Orders Under Review

By letter order dated June 16, 1987, the Commission determined, sua sponte, that from December 1983 through April 1984 and from January 1985 through April 1985, "Williston charged certain of its customers rates other than the rates prescribed in its effective tariff without specifically being granted waiver to charge those rates." 39 F.E.R.C. ¶ 61,326, at 62,027 (1987). The Commission therefore found Williston in violation of 18 C.F.R. § 154.21, which prohibits regulated natural gas companies from charging any rate other than that "prescribed in its effective tariff and executed service agreements on file with the Commission, unless otherwise specifically provided by order of the Commission." Accordingly, the Commission directed Williston to refund the difference to the affected customers, with interest ("carrying charges")—a total of $366,791.

Williston filed an application for rehearing. As relevant to this petition, Williston alleged that, with respect to the second time period (January 1985 to April 1985),

the Commission erroneously concluded that rates were charged other than those prescribed in its effective tariff. Williston noted that footnote "E" of its "Second Substitute Original Sheet No. 10," filed February 20, 1985, accepted by the Commission on April 26, 1985, and in effect during the relevant period, expressly states that "[r]ates for sales to [MDU] through April 30, 1985 will not reflect the Current Surcharge Adjustment."

By order dated February 4, 1988, the Commission denied rehearing with respect to the second period. See 42 F.E.R.C. ¶ 61,154, at 61,576 (1988). The Commission explained that "Williston never specifically requested, nor did the Commission specifically grant Williston the authority to charge any rate not reflected in its then effective tariff as required by section 154.-21 of the Commission's regulations." Id. at 61,577. This petition for review followed.

### II.

The issue presented is whether the Commission properly found that Williston violated section 154.21 by not charging the rates prescribed in its effective tariff.

Section 154.21 provides in relevant part:

No natural-gas company shall directly or indirectly, demand, charge or collect any rate or charge for or in connection with the transportation or sale of natural gas subject to the jurisdiction of the Commission, or impose any classifications, practices, rules or regulations, different from those prescribed in its effective tariff and executed service agreements on file with the Commission, unless otherwise specifically provided by order of the Commission.

18 C.F.R. § 154.21; cf. Montana–Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 251, 71 S.Ct. 692, 695, 95 L.Ed. 912 (1951) (holding that a utility "can claim no rate as a legal right that is other than the filed rate, whether fixed or merely accepted by the Commission").

In the instant case, the Commission does not dispute that Williston's effective tariff, on file with and accepted by the Commission, contains a pro forma rate sheet (the "Second Substitute Original Sheet No. 10") that states in a footnote that "[r]ates for sales to Montana–Dakota Utilities Co. through April 30, 1985 will not reflect the Current Surcharge Adjustment." Moreover, the Commission admits that the revised settlement agreement creating Williston and approved by the Commission includes a pro forma rate sheet that contains an identical provision. As we have previously held, such approval binds the Commission, at least in the absence of special circumstances, to all constituent parts of the agreement. *See Mobil Corp. v. Federal Power Commission,* 570 F.2d 1021, 1026 (D.C.Cir.1978). Even though the PGA surcharge exemption was contained in a footnote in an attachment to the revised settlement agreement, it is nonetheless covered by section 154.21 and the filed rate doctrine.

The Commission responds that, despite its acceptance for filing of the tariff and its approval of the settlement agreement, the provision on which Williston relies should have been specifically brought to the Commission's attention under Rule 203(a)(3) of the Commission's Rules of Procedure. That rule, which applies to "[a]ny filing or proceeding under this chapter," 18 C.F.R. § 385.101(a)(1), requires FERC jurisdictional companies such as Williston to include in their pleadings and tariff filings, as appropriate, "[t]he *specific* authorization or relief sought," *id.* § 385.203(a)(3) (emphasis added).

It is not clear to us, however, that Rule 203(a)(3) requires filing companies to call to the Commission's attention every detail of every proposed tariff change. Moreover, even if Rule 203(a)(3) does apply to the disputed exemption, there has been no relevant "change" to bring to the Commission's attention, because Williston was making its first PGA filing as a company and because the revised settlement agreement was separate and independent from the first settlement agreement. We in any event reject the Commission's argument as it was never articulated in the orders at issue. *See SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947). The Commission found only that Williston had charged rates not reflected in its effective tariff in violation of section 154.21; the orders neither mention Rule 203(a)(3) nor intimate that Williston should have brought the footnote to the Commission's attention.

We do not reach, and hence do not decide, the merits of the PGA exemption and other issues raised by the parties.

### III.

Because the pro forma tariff sheets filed by Williston and approved by the Commission clearly indicate that rates for sales to MDU during the relevant time period would not include PGA surcharge adjustments, we hold that the Commission erred in finding Williston in violation of 18 C.F.R. § 154.21. Accordingly, we grant the petition for review, vacate the relevant portions of the Commission's orders, and remand the case for further proceedings, if any.

*It is so ordered.*