Herman WOLKO, John Ratkelis, Robert Graham, William Peak, James Broadbent, Tom Peak, Edward Kuczynski, Ben Sztenderowicz, Walter Franks, Michael DeStefano, Henry Meller, Sr., and Harry Burns, Plaintiffs,

v.

HIGHWAY TRUCK DRIVERS AND HELPERS LOCAL 107, an unincorporated association affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Philadelphia, Pennsylvania, and Jones Motor Co., Inc., Philadelphia, Pennsylvania, and Mundy Motor Lines, Inc., Defendants.

Civ. A. No. 35123.

United States District Court
E. D. Pennsylvania.

Aug. 12, 1964.

Edward B. Bergman, Philadelphia, Pa., for plaintiffs.

Richard H. Markowitz, Philadelphia, Pa., for Highway Truck Drivers and Helpers Local 107.

Morgan, Lewis & Bockius, by Robt. J. Bray, Jr., John C. Peet, Jr., Philadelphia, Pa., for Jones Motor Co.

KRAFT, District Judge.

This matter is before us on plaintiffs' motion for a preliminary injunction.

The material facts may be briefly stated. Prior to February 11, 1963, the defendants, Jones Motor Co., Inc. (Jones), and Mundy Motor Lines, Inc.

(Mundy),[1] were motor freight companies engaged in interstate commerce. Both companies maintained terminals in Philadelphia.

From January 1, 1960, to December 31, 1962, both Jones and Mundy were parties to the same multi-employer, multi-local union collective bargaining agreement in the Philadelphia area, known as the Motor Transport Labor Relations, Inc. (M.T.L.R.) Master Agreement. The Philadelphia employees of both Mundy and Jones were represented, for the purposes of collective bargaining, by the defendant Highway Truck Drivers and Helpers, Local 107 (Local 107), affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (International).

Following the expiration of this agreement on December 31, 1962, all parties thereto agreed to continue operating under its terms and conditions while negotiations for a new agreement were under way.

On July 1, 1963, Jones and Local 107, together with other employers and local unions, became parties to a new collective bargaining agreement for the Philadelphia area, known as the Tri-Area Labor Association (Tri-Area) City Cartage Agreement. This agreement, by its terms, was to be effective from January 1, 1963, to December 31, 1965. Mundy was not a signatory to this agreement, since, at this time, it had ceased doing business as a separate company.

On February 11, 1963, Mundy ceased doing business and its Philadelphia terminal was closed. Its business in the Philadelphia area was taken over by Jones, and all of Mundy's drivers, the plaintiffs herein, were transferred to Jones' Philadelphia terminal. This transfer was part of a merger, sale, acquisition, or absorption of Mundy's business by Jones, although the precise form of the arrangement does not yet appear in the record of this case. However, the agreement relating to this transaction between the two companies was subject to the final approval of the Interstate Commerce Commission.

Following this transfer, the former Mundy employees were hired by Jones as employees at the Jones terminal, and were placed below the Jones employees on the Jones terminal seniority list, but in the precise order of seniority they had enjoyed as Mundy employees.

Prior to the transfer of the Mundy employees to the Jones terminal on February 11, 1963, and continuing thereafter, a dispute existed as to whether the Mundy men, after transfer, were to be placed at the foot of the Jones seniority list, or whether they should carry with them their original Mundy seniority dates and be "dovetailed" with the Jones employees on the basis of the original seniority date for each man at their respective companies. Article V, Section 5 of the M.T.L.R. Agreement, which was, by virtue of the aforesaid mutual agreement still in force and effect on February 11, 1963, provided:

"MERGERS, CONSOLIDATIONS, ABSORPTIONS—In the event that OPERATOR absorbs the business of private, contract or common carrier, or is a party to a merger of lines, or a consolidation, the seniority of the employes absorbed or affected thereby shall be determined by mutual agreement between OPERATOR, UNION and MTLR. The seniority will be discussed with UNION and MTLR prior to the effective date, except in unusual circumstances. · In the absence of agreement such matter shall be submitted as a grievance."

Pursuant to the above quoted provisions, there were discussions among all interested parties concerning the issue of seniority, but the parties were unable to resolve the problem. Finally, on October 4, 1963, the president of Local 107 filed a grievance on behalf of the former

---

1. We were advised at the hearing that Mundy had been dissolved as a corporation, and was no longer in existence at the time this suit was instituted.

**596**

Mundy employees, alleging, in effect, that the Mundy employees had been improperly placed at the bottom of the Jones seniority list. Owing to certain postponements and delays, not material for present purposes, the grievance had not been processed when this action was instituted, on February 19, 1964, nor at the time of the first hearing herein, on February 28.

The grievance hearing was held on March 6, 1964, before a panel of the Change of Operations Committee of the Tri-Area Joint Area Committee. There were no representatives from either Local 107 or Jones on this panel. After a full hearing, during which all interested parties were given an opportunity to present evidence and to be heard, the Committee rendered the following decision:

"1. That on February 11, 1963, Mundy Motor Lines ceased doing business in the Philadelphia area for all intents and purposes and that the date of February 11, 1963 is the decisive date for purposes of this hearing;

"2. That the seniority of the affected employees as of February 11, 1963, could only be determined under the provisions of Article 5, Section 5 of the January 1, 1960 Master Agreement between the Motor Transport Labor Relations, Inc. and Teamsters Local 107, since that agreement had remained in effect until June 10, 1963 for purposes of determining seniority in such cases;

"3. That the past practice under the provisions of Article 5, Section 5 of the January 1, 1960 Master Agreement between the Motor Transport Labor Relations, Inc. and Teamsters Local 107 had been to place the employees of the purchased employer at the bottom of the seniority list;

"4. That Jones Motor Company, Inc. and the union adhered to this practice when they placed the employees of Mundy Motor Lines at the bottom of the Jones Motor Company, Inc. seniority list; and

"5. That, therefore, the seniority list is correct in all respects and should be continued."

Article 7, § 4(b), of the Tri-Area Agreement provides: "Where the Joint Area Committee by majority vote settles a dispute, such decision shall be final and binding on both parties with no further appeal."

Plaintiffs claim that the placement of plaintiffs at the foot of the combined seniority list "was a direct and specific violation of the collective bargaining agreement"; and, further, that Local 107 "has breached the duty of fair representation which, as exclusive bargaining agent, it owed and still owes to plaintiffs herein."

■ Defendants vigorously contend that this Court is without subject-matter jurisdiction. We think that, under the allegations of the complaint, this Court has jurisdiction, and that defendants have confused the question of jurisdiction with the question whether the complaint states a cause of action. The complaint charges a violation of the collective bargaining agreement. Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, gives this Court jurisdiction in such cases. Whether or not the claim is well founded, is another and distinct question. As stated in Romero v. International Term. Co., 358 U.S. 354 at 359, 79 S.Ct. 468 at 473, 3 L.Ed.2d 368 (1959):

"The District Court dismissed petitioner's Jones Act claims for lack of jurisdiction. 'As frequently happens where jurisdiction depends on subject matter, the question whether jurisdiction exists has been confused with the question whether the complaint states a cause of action.' Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 249 [71 S.Ct. 692, 694, 95 L.Ed. 912]. Petitioner asserts a substantial claim that the Jones Act affords him a right of recovery for the negligence of his employer.

Such assertion alone is sufficient to empower the District Court to assume jurisdiction over the case and determine whether, in fact, the Act does provide the claimed rights. 'A cause of action under our law was asserted here, and the court had power to determine whether it was or was not well founded in law and in fact.' Lauritzen v. Larsen, 345 U.S. 571, 575 [73 S.Ct. 921, 924, 97 L.Ed. 1254]."

In Roadway Express, Inc. v. General Teamsters, Etc. Local 249, 330 F.2d 859 p. 861 (3rd Cir. 1964), the Court stated:

"The complaint properly averred a cause of action under § 301 of the Act. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962). Hence the District Court had jurisdiction over the claim. Whether such averments have merit or not is immaterial on the question of jurisdiction since that is determined from the face of the complaint. Hall v. Sperry Gyroscope Co., etc., 183 F.Supp. 891 (D.C. N.Y.1960)."

We conclude that this Court has jurisdiction, but that the motion for preliminary injunction should, nonetheless, be denied for the reasons hereafter stated.

■■ Ordinarily, the object of a preliminary injunction is either to preserve an existing status during pendency of the litigation, or to restore, during such pendency, a status which has been disturbed by the conduct complained of. The granting of the present motion would do neither. To the contrary, it would reverse the implementation of the decision of the Joint Area Committee and so, during the pendency of this action, change the existing status by ousting the present seniority of the original Jones drivers to what ever extent the dovetailing would produce. Such a reversal of the existing status does not appear appropriate to us until warranted, after final hearing, by a determination, favorable to plaintiffs, of the manifold problems involved in this controversy.

■■ A motion for preliminary injunction requires, too, a consideration of the balancing of the interests of the parties affected. Joseph Bancroft & Sons Co. v. Shelley Knitting Mills, 268 F.2d 569 (3rd Cir. 1959). Here, the real parties in interest are the two groups of drivers contesting for seniority. The twelve plaintiffs, if dovetailed by a preliminary injunction, would supplant a minimum of twelve of the original Jones drivers, and the consequent "bumping" caused by their displacement would undoubtedly effect a change in the seniority status of a number far higher than twelve. Balancing the interests of the competing groups of drivers, and considering, among other things, the number in each affected group, it does not appear to us that the balancing of interests indicates either the necessity or the desirability of entry of the preliminary injunction here sought.

■ Moreover, plaintiffs have made no showing of irreparable harm. Such a showing is a sine qua non for the issuance of a preliminary injunction. "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Beacon Theatres v. Westover, 359 U.S. 500, 506, 79 S.Ct. 948, 954, 3 L.Ed.2d 988 (1959).

All of the plaintiffs save one are employed by Jones, and appear to be working regularly. Plaintiff Burns, the low man on the terminal seniority list at Jones, is only on a "call-in" status, with the result that he must call the terminal on a daily basis to determine whether there is any work for him on that day. He testified that in the three weeks preceding the hearing, he had worked for Jones only one or two days per week, but that he did obtain work from the Local 107 "hiring hall". The loss sustained by Burns, regrettable as it may be, and any loss or inconvenience suffered by the other plaintiffs, due to their positions on the seniority list, do not, in our view, afford sufficient legal basis for the granting of the preliminary relief sought. There is neither allegation nor proof that

any defendant is financially irresponsible, and any injury suffered by plaintiffs, should they prevail upon final hearing, can be adequately compensated by a monetary award.

Accordingly, in our view, a decision on the claim for injunctive relief should abide a final hearing, when all evidence has been produced and all legal positions adequately explored and presented.

## ORDER

Now, August 12th, 1964, plaintiffs' motion for a preliminary injunction is denied.