862 F.2d 69
 KENTUCKY WEST VIRGINIA GAS COMPANY
and
Equitable Gas Company
v.
PENNSYLVANIA PUBLIC UTILITY COMMISSION, Linda C. Taliaferro,
Commissioner, Public Utility Commission, Frank Fischl,
Commissioner, Public Utility Commission, Bill Shane,
Commissioner, Public Utility Commission,
and
Federal Energy Regulatory Commission, Consumer Advocate for
the Commonwealth of Pennsylvania, Office of the
Pennsylvania Attorney General, Intervenor.
Appeal of PENNSYLVANIA PUBLIC UTILITY COMMISSION, Appellant
in 87-5840.
Appeal of KENTUCKY WEST VIRGINIA GAS COMPANY and Equitable
Gas Company, a Division of Equitable Resources,
Inc., Appellant in 87-5861.
 Nos. 87-5840 and 87-5861.
 United States Court of Appeals,
Third Circuit.
 Argued July 26, 1988.
Nov. 28, 1988.
 
 William A. Mogel (argued), William R. Mapes, Jr., Randall C. Smith, Ross, Marsh & Foster, Washington, D.C., Charles E. Thomas, Jr., Carroll F. Purdy, Thomas & Thomas, Harrisburg, Pa., for Kentucky West Virginia Gas Co. and Equitable Gas Co., a division of Equitable Resources, Inc.
 Leroy A. Zimmerman, Atty. Gen., Carl S. Hisiro, Deputy Atty. Gen., Eugene F. Wayne, Deputy Atty. Gen., Chief, Antitrust Section, Office of the Atty. Gen., Harrisburg, Pa., for the Office of Atty. Gen., Com. of Pennsylvania.
 Daniel P. Delaney, Chief Counsel, Lawrence F. Barth, Asst. Counsel, John F. Povilaitis (argued), Deputy Chief Counsel, Pennsylvania Public Utility Com'n, Harrisburg, Pa., for Pennsylvania Public Utility Com'n.
 Catherine C. Cook, General Counsel, Jerome M. Feit, Sol., John N. Estes, III, F.E.R.C., Washington, D.C., for Federal Energy Regulatory Com'n.
 David M. Barasch, Consumer Advocate, Philip F. McClelland (argued), Kent D. Murphy, Asst. Consumer Advocates, Pennsylvania Office of Consumer Advocate, Harrisburg, Pa., for Pennsylvania Office of Consumer Advocate.
 Before GIBBONS, Chief Judge, SEITZ and HUTCHINSON, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 Plaintiffs Equitable Gas Company (Equitable) and Kentucky West Virginia Gas Company (Kentucky West) appeal from that portion of an order of the district court denying them prejudgment interest. Defendant Pennsylvania Public Utility Commission (PUC) cross-appeals from that portion of the same order finding the Pennsylvania Act of May 31, 1984, No. 1984-74, 66 Pa.Con.Stat.Ann. Secs. 1307(f), 1317-18 (West Supp.1988) (Act 74) unconstitutional as applied to Equitable and Kentucky West.[1] The district court had jurisdiction under 28 U.S.C. Sec. 1331. We have jurisdiction under 28 U.S.C. Sec. 1291.I.
 
 A.
 
 2
 Plaintiff Equitable is a retail distributor of natural gas. It purchases natural gas from several wholesale suppliers including its affiliate, plaintiff Kentucky West an interstate natural gas pipeline company. Kentucky West sells natural gas wholesale to Equitable under a long-term contract approved by the Federal Energy Regulatory Commission (FERC) under the provisions of the Natural Gas Act, 15 U.S.C. Secs. 717c-717d (1982). The contract entitles Equitable to receive from Kentucky West a fixed amount of natural gas each day.[2] The contract between Equitable and Kentucky West also contains a minimum bill provision requiring Equitable to pay for a percentage of its contract entitlement under Kentucky West's FERC-approved rate schedule regardless of whether Equitable actually needs or wants the gas. Thus, Equitable is subject to a monthly minimum bill obligation that reflects its contract entitlement. See Kentucky West Virginia Gas Co. v. Pennsylvania Public Utility Commission, 837 F.2d 600, 609 10 n. 7. (3d Cir.) (Kentucky West I ), cert. denied, --- U.S. ----, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988).
 
 
 3
 The Natural Gas Act allows the states to regulate retail natural gas rates. Equitable's retail rates in Pennsylvania are regulated by the defendant PUC. Equitable also has retail customers in West Virginia, and its retail sales in that state are regulated by the West Virginia Public Service Commission.
 
 
 4
 Pennsylvania's Act 74 provides for the adjustment of retail natural gas rates in accordance with a "least cost" fuel procurement policy. Under the mechanism established by the Act, the utility first files a proposed tariff with the PUC. The PUC is then authorized to conduct an investigation of the proposed retail rate change. PUC review is both forward- and backward-looking: In accordance with the least-cost principles set forth in the statute, see 66 Pa.Con.Stat.Ann. Sec. 1318, the PUC determines what portion of the utility's estimate of gas costs for the upcoming period should be allowed. The PUC also reconciles the utility's actual cost experience during the previous period with the estimated costs that were the basis for the retail rate charged during that period. The utility must refund to its customers any revenues collected which exceed actual gas expenses incurred consistent with the least cost procurement policy, and can recover from its customers any amount by which actual gas expenses incurred consistent with least-cost principles exceeded revenues. This adjustment--whether a refund of an overcollection or a recovery of an undercollection--is included in the retail rate that is set for the upcoming period.
 
 
 5
 The Act also provides that "refunds to patrons shall be made with interest ... during the period or periods for which the commission orders refunds." Id. at Sec. 1307(f)(5). The Act is silent as to the payment of interest to the utility on undercollections from its customers. PUC regulations, however, provide that "[i]nterest shall not be permitted on net undercollections caused by the setting of rates under 66 Pa.C.S. Sec. 1307(f)." 52 Pa. Code Sec. 53.64(i)(3).[3]
 
 B.
 
 6
 This case presents the plaintiffs' second constitutional challenge to Act 74. In Kentucky West I, 837 F.2d 600, we rejected a facial challenge to Act 74 under the supremacy and commerce clauses of the United States Constitution. We also rejected an as-applied constitutional challenge to a PUC order that disallowed Equitable $14.3 million dollars in FERC-approved costs.
 
 
 7
 The present case is a challenge to a new PUC order (the Order) issued under Act 74 on August 29, 1986, in response to a proposed rate increase filed by Equitable. In issuing this Order, the PUC anticipated that FERC would approve reductions in Equitable's contract entitlement with Kentucky West.[4] A reduction in contract entitlement would have meant a corresponding reduction in Equitable's FERC-approved minimum bill obligation. As a result of its assumption concerning the anticipated reduction in Equitable's contract entitlement, the PUC Order excluded $865,000 in wholesale gas costs from Equitable's retail rates for the then-prospective period of September 1, 1986 through August 31, 1987. By the time of this litigation Equitable's contract entitlement had not yet been reduced.
 
 
 8
 The PUC Order also retroactively disallowed recovery of $3.5 million for payments Equitable made to two of its interstate suppliers. The PUC found these payments to be inconsistent with Pennsylvania's least-cost procurement policy.
 
 
 9
 In the district court, the plaintiffs charged that the $865,000 disallowance--which prevented Equitable from immediately passing through its FERC-approved minimum bill obligation as it stood at the time the retail rate was set--violated the filed rate doctrine, even though the Act would have permitted Equitable eventually to receive year-end adjustments in the event that FERC did not actually reduce the utility's liability. Equitable and Kentucky West argued that the supremacy clause mandated that Equitable be able immediately to pass through to its retail customers unavoidable FERC-approved costs.
 
 
 10
 The plaintiffs also challenged PUC's retroactive disallowance of the $3.5 million of wholesale costs. The plaintiffs argued that the PUC Order violated the commerce clause because the West Virginia Public Service Commission had allowed Equitable the same costs in setting rates for its retail customers in West Virginia.
 
 
 11
 The district court rejected the plaintiffs' commerce clause challenge but agreed that the $865,000 disallowance violated the supremacy clause and ordered the PUC to permit Equitable full recovery of its unavoidable FERC-approved costs. The district court ordered that the retail rate then currently in effect be raised to compensate Equitable for the difference between the rate that had been set and the rate that would have been set if the PUC had not assumed that there would be a reduction by FERC in the contract entitlement with Kentucky West. By the time of the district court judgment, through the normal operation of the Act's retroactive adjustment mechanism, Equitable had already been permitted to recover $353,000 of the $865,000. The district court thus ordered the retail rate schedule to be increased by $512,000, so that Equitable would recover the full $865,000. The district court denied Equitable's request for interest on that amount through the date of the judgment. Equitable's appeal and PUC's cross-appeal followed.
 
 II.
 
 12
 First, this case presents an as-applied commerce clause challenge to the August 29, 1986, Order of the PUC. In Kentucky West I, plaintiffs--relying on a variety of theories--urged that Act 74 facially violated the commerce clause. See Kentucky West I, 837 F.2d at 611-16. We rejected this attack and held that on its face Act 74 withstood commerce clause scrutiny. See id.
 
 
 13
 Plaintiffs here claim that Act 74 as applied to them by the PUC Order subjects them to inconsistent requirements of state regulation that rise to the level of a commerce clause violation.[5] In Kentucky West I we disposed of an identical "Balkanization" claim on the ground that--as to the earlier PUC order challenged there--no evidence of such an effect had been produced. See id. at 616.
 
 
 14
 In support of their current contention that the PUC treatment of purchased gas supplies violated the commerce clause, the plaintiffs in this case supplied the affidavit of John F. Brown, Vice-President of an energy consulting firm. Brown compared the regulatory regimes to which Equitable is subject in Pennsylvania and West Virginia. Though both states follow a "least cost" procurement policy, West Virginia found permissible $3.5 million in costs that PUC denied as imprudent. This, the plaintiffs contend, establishes conflicting state regulations which, under Bibb v. Navajo Freight Lines, Inc., 359 U.S. 520, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959), and Norfolk Southern Corp. v. Oberly, 822 F.2d 388, 399 (3d Cir.1987), are impermissible.
 
 
 15
 Mere inconsistency among state policies, however, does not establish a commerce clause violation. An inconsistency must first result in an actual conflict that seriously impedes interstate commerce. See Bibb, 359 U.S. at 524, 79 S.Ct. at 965. At most the Brown affidavit suggests that the West Virginia and Pennsylvania policies differ with respect to the obligation of retail gas distributors to make prudent gas purchases. West Virginia would find some gas purchases to be prudent which Pennsylvania would find imprudent.
 
 
 16
 Such disparate results are a normal and predictable result of Congress's decision to retain more than one regulatory regime. Plaintiffs have presented no evidence that they cannot conform their business conduct in West Virginia to the West Virginia regulatory scheme and their Pennsylvania business conduct to the Pennsylvania regulatory scheme. Thus--as in Kentucky West I--the plaintiffs have failed to show actual conflict between the regulatory requirements of different states sufficient to implicate the commerce clause. See Kentucky West I, 837 F.2d at 616.[6]
 
 III.
 
 17
 Next, this case presents a supremacy clause challenge to the constitutionality of Act 74 as applied to Kentucky West and Equitable by the PUC Order.[7] This challenge requires us to consider some of the implications of the filed rate doctrine as developed by the Supreme Court in Nantahala Power & Light v. Thornburg, 476 U.S. 953, 106 S.Ct. 2349, 90 L.Ed.2d 943 (1986), and Mississippi Power & Light v. Mississippi ex rel. Moore, --- U.S. ----, 108 S.Ct. 2428, 101 L.Ed.2d 322 (1988).
 
 
 18
 The filed rate doctrine states that because of FERC's exclusive jurisdiction over wholesale rates, "the right to a reasonable rate is the right to the rate which the Commission files or fixes." Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 251-52, 71 S.Ct. 692, 695, 95 L.Ed. 912 (1951). In Nantahala Power, the Supreme Court concluded that under the filed-rate doctrine states may not bar regulated utilities from recovering FERC-mandated wholesale costs. The supremacy clause requires that utilities be permitted to pass through these costs to their retail customers in retail rates, See Nantahala Power, 476 U.S. at 967-72, 106 S.Ct. at 2356-60. This pre-emptive effect attaches not only to wholesale rates, but to other FERC decisions "affect[ing]" those rates. See id. at 967, 106 S.Ct. at 2357. If a utility could not pass through these FERC-approved costs, they would become "trapped." This, the Court concluded, would violate the supremacy clause. These principles were recently reaffirmed by the Supreme Court in Mississippi Power. See Mississippi Power, 108 S.Ct. at 2439.
 
 
 19
 In Kentucky West I we held that when a utility had the option of purchasing wholesale gas at a lower rate, Nantahala Power did not mandate pass-through of an actual cost incurred in the wholesale purchase of natural gas merely because the price at which the gas was purchased had FERC approval. See Kentucky West I, 837 F.2d at 609. However, the FERC-approved costs disallowed by the PUC here were mandatory, and the principles of Nantahala Power and Mississippi Power clearly apply to the case before us. See, e.g., Mississippi Power, 108 S.Ct. at 2440 (state review of prudence of purchase of power pre-empted where purchase was mandatory because FERC order covered both the cost and quantity of the power to be purchased).[8] It is not disputed that the PUC must allow Equitable to pass its minimum bill liability through to its retail customers.
 
 A.
 
 20
 The question with which we are faced--and which we were not required to face in our decision in Kentucky West I--is whether the Natural Gas Act pre-empts a state procedure for retail ratemaking that does not immediately pass through a utility's minimum bill obligation.[9] We conclude, contrary to the decision of the district court, that--so long as the utility is able to recover completely these unavoidable FERC-approved costs--they need not be immediately passed through. There is nothing inherent in the filed rate doctrine that requires a more rigid application, and a delay in passing through these costs does not dishonor the purposes behind the doctrine because the state does give effect to the filed rate. A state agency therefore does not violate the supremacy clause if it maintains retail rate procedures that have the effect of delaying recovery of unavoidable, FERC-approved wholesale costs actually incurred until a later point in time. Cf. Arkansas Power & Light Co. v. Missouri Public Service Comm'n, 829 F.2d 1444 (8th Cir.1987).
 
 
 21
 Here, the Pennsylvania Act does not violate the filed rate doctrine. The state regulatory scheme temporarily disallowed a pass-through of wholesale costs incurred under a filed rate but permitted recapture in a later time period. The Pennsylvania scheme reflects a state policy favoring prudent gas purchases. The rate adjustment mechanism is designed to help consumers by allowing them to pay more accurate rates, and to protect utilities from fluctuating fuel costs and more frequent rate filings. At the same time it permits the PUC an opportunity to review the prudence of natural gas purchases by utilities in order to ensure lower natural gas prices for consumers. See Pa.Leg.J.House 1975 (Dec. 5, 1983) (statement of Rep. Wambach). If a state wants to use such an adjustment mechanism the pre-emptive force of FERC jurisdiction does not prevent it, so long as the full FERC-approved filed rate ultimately is passed-through to the utility's retail customers.[10]B.
 
 
 22
 We next consider the suggestion that the Pennsylvania regulation, by prohibiting the inclusion of interest on net annual undercollections, may operate to deny a utility the time value of FERC-mandated wholesale costs. This is simply one aspect of the problem of "regulatory lag"--a delay between the imposition of wholesale costs on a utility and state regulatory commission approval of a retail rate increase. Regulatory lag is inherent in many systems of retail rate regulation; it is not a novel or unique feature of Pennsylvania's regulatory scheme. See, e.g., Leaffer, Automatic Fuel Adjustment Clauses: Time for a Hearing, 30 Case W.Res.L.Rev. 228, 229-30 (1980).
 
 
 23
 A super-rigid application of the filed rate doctrine might treat the amount lost through the denial of interest on net annual undercollections as a cost trapped in violation of the supremacy clause. We conclude, however, that the denial to a utility of interest on FERC-imposed wholesale costs does not--without more--violate the filed rate doctrine. We do not believe that the filed rate doctrine as articulated by the Supreme Court in Nantahala Power and Mississippi Power requires invalidation of otherwise permissible state mechanisms for retail rate adjustment simply because they deny utilities interest on such costs during periods of regulatory lag. Cf. Arkansas Power & Light Co. v. Missouri Public Service Comm'n, 829 F.2d 1444, 1452 (8th Cir.1987).[11]
 
 IV.
 
 24
 The plaintiffs' appeal sought to reverse that portion of the order of the district court denying them prejudgment interest. Since we are reversing the order insofar as it declared Act 74 unconstitutional, it follows that the plaintiffs are not entitled to recover interest. We will therefore affirm this portion of the district court's order, but on a different ground.
 
 V.
 
 25
 Accordingly, in 87-5840, that portion of the order of the district court holding Act 74 unconstitutional as applied will be reversed. In 87-5861, that portion of the order denying prejudgment interest will be affirmed. In both appeals costs will be taxed against plaintiffs.
 
 
 
 [1]
 Pennsylvania's Office of Consumer Advocate is an intervenor defendant in this action. The Federal Energy Regulatory Commission (FERC) is a named defendant, but as in a previous challenge to Act 74 before this court, "their position is more akin to that of an amicus." Kentucky West Virginia Gas Co. v. Pennsylvania Public Utility Commission, 837 F.2d 600, 605 n. 4 (3d Cir.) (Kentucky West I ) cert. denied, --- U.S. ----, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988)
 
 
 [2]
 The PLS-1 tariff under which sales are presently made to Equitable was filed with FERC in 1977. Kentucky West's FERC-approved PLS-1 rate schedule requires it to deliver to Equitable on a daily basis up to 71,013 dekatherms (Dth) of natural gas. This is Equitable's "contract entitlement."
 
 
 [3]
 Although the PUC normally conducts its historic review annually, a utility may effectively receive interest on monthly undercollections. In operation the PUC determines on a monthly basis whether there has been an overcollection or an undercollection. The PUC calculates interest on these monthly over- or under-collections at the mortgage rate. In the annual reconciliation procedure, interest owed by the ratepayers to the utility for monthly undercollections can offset interest owed by the utility to its ratepayers for monthly overcollections. The utility is thus denied only the interest on net annual undercollections: it cannot recover the amount--if any--by which interest on monthly undercollections exceeds interest on monthly overcollections
 
 
 [4]
 At the time the PUC issued the Order, Equitable had been negotiating with Kentucky West for such a reduction. During the PUC's investigation, Equitable's Vice-President of Corporate Planning gave testimony that indicated that FERC approval of a reduction was imminent. In establishing the Pennsylvania retail rates, therefore, the PUC imputed a reduction of almost 20% in Equitable's entitlement under Kentucky West's PLS-1 tariff from 71,013 Dth to 56,900 Dth per day
 
 
 [5]
 The plaintiffs also put forward in the district court--and reassert before us now for purposes of a petition for certiorari in this case--the same arguments that we rejected in Kentucky West I, 837 F.2d 600. As to these arguments, Kentucky West I, of course, controls. Since the argument in this case, the petition for certiorari in Kentucky West I has been denied. Kentucky West Virginia Gas Co. v. Pennsylvania Public Utility Commission, --- U.S. ----, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988)
 
 
 [6]
 We also find without merit plaintiff's claim that the district court committed error by dismissing the Balkanization claim without a hearing or development of a full evidentiary record
 
 
 [7]
 We have already rejected a facial supremacy clause challenge to the Pennsylvania statute, see Kentucky West I, 837 F.2d 600
 
 
 [8]
 Though Nantahala Power and Mississippi Power were both decided under the Federal Power Act, rather than the Natural Gas Act, "the two statutes 'are in all material respects substantially identical,' " and decisions interpreting them may be cited interchangeably. See Arkansas Louisiana Gas Co. v. Hall, 453 U.S. 571, 577 n. 7, 101 S.Ct. 2925, 2930 n. 7, 69 L.Ed.2d 856 (1981) (citation omitted)
 
 
 [9]
 In Kentucky West I, we rejected a similar as-applied challenge on the ground that Equitable had not shown that any of its disallowed costs represented a minimum bill obligation. See Kentucky West I, 837 F.2d at 609-610
 
 
 [10]
 This case does not require us to consider whether there may be situations where FERC might conclude that the policy underlying the Natural Gas Act requires an immediate pass-through of wholesale costs. Consequently we do not address that possibility
 
 
 [11]
 Of course, a delay for an unreasonable period of time in passing through FERC-mandated wholesale costs--not the situation before us in this case--might independently violate the due process clause of the fifth or fourteenth amendment. Similarly, a state decision intentionally to underestimate costs in order to deny a utility the time value of its money might violate substantive provisions of the federal Constitution